UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RAYSHON WHITE,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS REAGLE,<br>ANDREW COLE,<br>CHARLIE FOX,<br>ARAMARK,<br>TRENT ALLEN,<br><br>Defendants. | ) | Case No. 1:24-cv-01153-TWP-MKK |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Aramark (Dkt. 39) and two Motions for Summary Judgment (original and corrected), filed by Defendants Dennis Reagle, Andrew Cole, Charlie Fox, and Trent Allen (" IDOC Defendants") (Dkt. 43, and Dkt. 47). *Pro se* Plaintiff Rayshon White ("White") alleges in this 42 U.S.C. § 1983 lawsuit that both groups of Defendants violated his Eighth Amendment rights and state law by depriving him of adequate nutrition, hygiene, and access to medical care during an extended lockdown at Pendleton Correctional Facility ("Pendleton."). (Dkt. 2). For the reasons discussed below, the motions for summary judgment are **granted**.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable

to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II. FACTUAL BACKGROUND

White failed to respond to the summary judgment motions.[1] Accordingly, facts alleged in the motions are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant 'still [has] to show that summary judgment [is] proper given the undisputed facts,'" *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011), with those facts taken as usual in the light most favorable to the nonmovant." *Robinson v. Waterman*, 1 F.4th

[1] White request to extend his deadline to respond to Defendants' motions for summary judgment was granted and he was given until May 8, 2026 to respond. (Dkt. 49). To date, no response has been filed.

480, 483 (7th Cir. 2021). Although White has not responded, because Defendants moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to White and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

**A. The Parties**

White is in the custody of the Indiana Department of Corrections ("IDOC") and, during all relevant times, was incarcerated at Pendleton. (Dkt. 2). Defendant Aramark provides food services to Pendleton pursuant to its contract with the IDOC. (Dkt. 41-1 ¶ 4). Defendant Reagle served as the Warden of Pendleton during the beginning of the lockdown in October 2023 until January 2024. (Dkt. 44-2 ¶ 1). Defendant Allen was the Warden of Pendleton from early January 2024 until December 26, 2025. (Dkt. 44-1 ¶¶ 1, 23). Cole and Fox were Deputy Wardens at Pendleton during the lockdown at issue in this lawsuit. (Dkt. 44-3 ¶ 1; Dkt. 44-4 ¶ 1). During the lockdown, the Wardens did not personally manage or perform every day-to-day operational task, including food preparation, routine inmate movement, or the provision of medical care, which were handled by designated custody, food service, and medical staff in accordance with policy. *Id*.

**B. The Lockdown at Pendleton**

Around October 6, 2023, Pendleton experienced a serious assault on staff in J-Cellhouse in which one staff member was stabbed and transported to the hospital and another staff member was injured while responding to the incident. (Dkt. 44-3 ¶ 5). As a result, Pendleton instituted a facility-wide lockdown to address security concerns, conduct searches, investigate the assault, and stabilize conditions. *Id.* ¶ 6. The lockdown was implemented to prevent further violence and determine how weapons entered the facility. (Dkt. 44-2 ¶ 7). During the first week of the lockdown, no offenders were permitted out of their housing units, and the facility operated under complete

lockdown conditions for approximately one to two weeks. (Dkt. 44-3 ¶ 8). Some form of lockdown conditions lasted until February 2024. *Id.* ¶ 13.

**C. Food Service During the Lockdown**

During lockdowns, Aramark workers generally prepare sack meals instead of the usual hot trays. (Dkt. 41-1 ¶ 6). These lockdown meals are part of the Master Menu created by an Aramark dietician, but they differ from the normal hot trays. *Id.* ¶ 7. All meals that conform to the Master Menu meet the American Correctional Association's nutritional guidelines, which are based on the Food and Nutrition Board of the National Academy of Sciences' dietary reference intakes for people between the ages of 19 and 50. *Id.*

The parties dispute the quantity and quality of the sack meals during the lockdown. According to White, the fruit and vegetables were always rotten and the bread was stale and moldy most of the time. (Dkt. 41-2 at 9:10-21; 21:11-25; 25:1-13). The bread was so hard at times that it would cut your gums. *Id*. Portions were visibly much smaller than the normal hot food trays. *Id.* at 17:22–18:17. White attest that he "complained to the officer that worked in the dorm at the time and they called Aramark to let them know what was going on with the food and stuff, and all we was told is that it was above their pay grade." *Id*. at 12:16-21.

Before the lockdown, inmates delivered meals and they did not have issues with food. (Dkt. 41-2 at12:1-5). During the lockdown, when inmate workers could not distribute the food, correctional officers distributed it. *Id.* at 12:2-18. Occasionally, inmate workers were allowed out of their cells to distribute the sack meals and Aramark supervisors escorted the inmates to deliver the food, but did not deliver it themselves. *Id*. 12:10-25, 13:19–14:3.

Aramark Food Services Director, Tisha Thompson ("Thompson"), was aware of intermittent complaints from inmates about receiving sacks instead of hot meals, but she was not

aware of widespread complaints about portion size or spoiled food. (Dkt. 41-1 ¶ 14). The IDOC Defendants attest that they did not observe or have reason to believe that the sack meals were nutritionally deficient. (Dkt. 44-2 ¶ 11, Dkt. 44-4 ¶ 10). They also deny receiving "substantiated complaints" that the food was "consistently" spoiled, moldy, or rotten. (Dkt. 44-2 ¶ 14); (Dkt. 44-3 ¶ 16); (Dkt. 44-4 ¶ 17). Thompson oversaw the production of the sack meals during lockdown to ensure that the meals were properly stored and that the food is safe for consumption. (Dkt. 41-1 ¶ 9).

**D. Hygiene and Access to Commissary During the Lockdown**

White testified that hygiene items and commissary were restricted during the lockdown, forcing him to rely on what was provided by the IDOC Defendants. (Dkt. 2 at 2). White affirms that during the lockdown, he observed that inmate workers did not wear gloves and they could not wash their hands due to the lockdown restrictions on hygiene items and commissary. (Dkt. 2 at 2).

In contrast, the IDOC Defendants testified that inmates wore gloves while distributing food. (Dkt. 44-3 ¶ 19); (Dkt. 44-4 ¶ 21). The IDOC Defendants testified that cleaning supplies were regularly provided to housing units during the lockdown and staff routinely cleaned the common areas by collecting trays and sweeping after meals. (Dkt. 44-4 ¶ 22). Although Commissary was restricted during the lockdown, inmates could still purchase hygiene and sanitation items, medical items, and snacks subject to spending limits. *Id.* ¶ 28. Facility records confirm that the October 9, 2023 commissary order was cancelled, the October 23, 2023 order had restrictions on hygiene items, the November 6, 2023 order had unrestricted hygiene, and the remaining orders were full orders. *Id.* ¶ 29.

### E. Access to Medical Services During the Lockdown

During the lockdown access to the medical wing was restricted. When White attempted to speak to medical staff about his weight loss, they told him that he was not allowed to go to the medical wing. (Dkt. 41-2 at 18:21–19:10). Medical staff came to White's dorm to dispense medications and check vital signs, but did not provide any relief for the weight loss and digestive and mental health issues that he experienced during the lockdown. *Id.* 29:12–30:24. White affirms that during the lockdown period, he suffered physical injuries (substantial weight loss, muscle atrophy, torturous stomach pains, a bloody stool, dizziness, nausea, vomiting, and more) and mental/emotional injuries (significant anxiety, depression and more), as a result of the defendants' actions and inactions" (Dkt 2 at 6).

In contrast, the IDOC Defendants testified that medical services continued to operate during the lockdown. (Dkt. 44-3 ¶ 21). Inmates could still submit healthcare request forms, receive routine screenings, and be escorted to the medical wing when necessary. *Id.* ¶ 22. The IDOC Defendants did not issue a policy or directive denying access to medical care. *Id.* ¶ 25; (Dkt. 44-4 ¶ 27); (Dkt. 44-2 ¶ 23).

## III. DISCUSSION

White proceeds on Eighth Amendment conditions of confinement claims against Warden Reagle, Deputy Warden Cole, Deputy Warden Fox, and Aramark as well as an Eighth Amendment denial of medical care claim against Warden Reagle, Deputy Warden Cole, Deputy Warden Fox. White also proceeds on an injunctive relief claim against Warden Allen and a state law breach of contract claim against Aramark. (*See* Dkt. 11). Defendants argue that they are entitled to summary judgment because: (1) White cannot demonstrate success on the merits or that the benefits of granting the injunctions outweigh the resultant harm to Defendants (2) White's conditions were

not violative of the Eighth Amendment; and (3) Defendants are entitled to qualified immunity. Aramark also argues that the state law claim should also be dismissed as summary judgment is appropriate in favor of the Defendant pursuant to controlling case law. The Court discusses each of White's claims below.

**A. Injunctive Relief Claim against Trent Allen**

The Court's screening order allowed a claim for injunctive relief to proceed against Warden Allen in the event of another lockdown with the same restrictions described in White's complaint. At this juncture, White has not provided any evidence that the conditions he complained about are ongoing or that there is an immediate threat of another lockdown. Because White does not show a threat of repeated injury, he does not have standing to sue Warden Allen for injunctive relief. *See Arcidiacono v. Whitehorn*, 178 F.4th 338, 341 (7th Cir. 2026) ("To establish standing to sue for injunctive relief, the plaintiffs must allege facts showing that they 'face a real and immediate threat of repeated injury.'") (quoting *Murthy v. Missouri*, 603 U.S. 43, 58 (2024)). Therefore, the Court **grants** summary judgment for Warden Allen.

**B. Conditions of Confinement**

The conditions described by White in his verified complaint (Dkt. 2) are deplorable. Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Conditions of confinement count as objectively serious when they deny a prisoner "the minimal civilized measure of life's necessities," such as food, sanitation, and

adequate shelter. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012); *Vinning–El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind—that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

"'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). For this purpose, each Defendant is considered independently. *Id.*

### 1. Warden Reagle, Deputy Warden Cox, and Deputy Warden Cole

The IDOC Defendants argue that White has not shown that he was physically injured by their conduct, the conditions during the lockdown did not pose a serious risk to White's health, the IDOC Defendants did not act with deliberate indifference, and they are entitled to qualified immunity. (Dkt. 45). The Court agrees with the IDOC Defendants on the issue of deliberate indifference and therefore only addresses this argument.

Based on the record, a reasonable jury could not infer that Warden Reagle, Deputy Warden Cox, or Deputy Warden Cole were subjectively aware of the issues with food, hygiene, and medical care that White describes in his complaint and in his testimony and then refused to take reasonable measures to correct them. Although the wardens were presumably responsible for implementing the lockdown, there is no evidence that they knew about the issues with rotten food, small portions, or denial of medical care for White's weight loss and digestive issues.

White alleges in his verified complaint that he "informed" the wardens and they were "aware" of the issues. *See* Dkt. 2 at 2–3. However, at the summary judgment stage, he must provide evidence of this knowledge to sustain these allegations. To show deliberate indifference, the plaintiff must point to evidence that the defendant had "actual, and not merely constructive, knowledge of the risk." *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018) (internal quotations omitted). This requires that the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* (internal quotations omitted). Although circumstantial evidence suffices to show knowledge, White has not designated any evidence from which a jury could conclude that the conditions he experienced were obvious or known by the wardens. *See Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established that in order to withstand summary judgment, the non-movant must allege specific facts creating a genuine issue for trial and may not rely on vague, conclusory allegations.").

In sum, White has not met his burden of providing evidence from which a jury could find that the wardens knew about the conditions he endured during the lockdown. White is the nonmoving party, so he receives "the benefit of conflicting evidence and reasonable inferences." *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). That said, he must "produce evidence sufficient to establish [the] element[s] essential to" his claim. *Id.* Although the verified complaint states that White "informed" the wardens and that they were "aware" of the issues with hygiene, medical care, and food, he didn't provide any testimony or documentary evidence to prove that (e.g., grievances or requests for interview) or "affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of DuPage,* 715

F.2d 1238, 1243 (7th Cir.1983). Thus, summary judgment is **granted** for the IDOC Defendants on the conditions of confinement claim.

### 2. Aramark

Private corporations acting under color of state law, such as Aramark, are treated as municipalities for purposes of § 1983 and can be sued when their actions violate the Constitution. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978)). To survive summary judgment on a *Monell* claim, White must first show he was deprived of a federal right. *Id.* Then, he must provide evidence showing that Aramark's actions plausibly deprived him of the right at issue. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Aramark cannot be held liable under the theory of respondeat superior. *Id.* Thus, White must show that Aramark, "either through an express policy or an implied policy of inaction, took deliberate action that was the moving force behind a constitutional injury." *Taylor v. Hughes*, 26 F. 4th 419, 435 (7th Cir. 2022) (quotation marks omitted). Under this theory, a plaintiff "must typically point to evidence of a prior pattern of similar constitutional violations" to "ensure that there is a true municipal policy at issue, not a random event." *Id.* (cleaned up).

"Municipal liability only attaches when the plaintiff shows that the municipality acted with deliberate indifference." *Gasaway v. Vigo Cnty. Sheriff's Dep't*, 672 F. Supp. 3d 651, 660 (S.D. Ind. 2023) (citing *J.K.J. v. Polk Cnty*., 960 F.3d 367, 377 (7th Cir. 2020)); *see also Miranda v. Cnty. of Lake*, 900 F.3d 335, 345 (7th Cir. 2018) (applying deliberate indifference standard to pretrial detainee's Monell claim). Under that standard, White must show that he was at serious risk of exposure to harm, and Aramark "kn[ew] of a substantial risk of harm to an inmate and either

act[ed] or fail[ed] to act in disregard of that risk." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020).

White has not designated any evidence showing that Aramark had an explicit policy or a widespread practice of serving rotten and calorically inadequate sack meals during the lockdown. The only evidence in the record shows that Aramark's lockdown meals conformed to its Master Menu, which are based on the Food and Nutrition Board of the National Academy of Sciences' dietary reference intakes for people between the ages of 19 and 50. (Dkt. 41-1 ¶ 7). Although there is conflicting testimony about the quantity and quality of meals that White received during the lockdown, there is no evidence that an Aramark policy or practice caused the sacks to contain rotten food and inadequate portions. Importantly, as seen above, in a § 1983 Aramark cannot be held vicariously responsible for its employees' actions—there must be evidence that Aramark's actions caused the constitutional violations. *See Calhoun*, 408 F.3d at 379. Accordingly, summary judgment for Aramark on the Eighth Amendment conditions of confinement claim is **granted**.

### C. Denial of Medical Care

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th

Cir. 2016)). Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Rather, White "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Here, White has not provided any evidence that Warden Reagle, Deputy Warden Fox, or Deputy Warden Cole knew about his inability to access medical care during the lockdown. White does not contradict the IDOC testimony that inmates could still submit healthcare request forms, receive routine screenings, and be escorted to the medical wing when necessary. Furthermore, they each testify, and White does not contradict, that they did not implement any policies or directives denying White and other inmates' access to medical care. (Dkt. 44-3 ¶ 25). And nothing in the record shows that the IDOC Defendants observed his declining medical condition, or that White reported the lack of medical care directly to them. Therefore, there is no basis for inferring that they were put on notice that White lacked the ability to seek medical treatment for his weight loss and digestive issues. Accordingly, the summary judgment is **granted** for the wardens on this claim.

**D. <u>State Law Claim Against Aramark</u>**

With White's constitutional claims staged for dismissal, the Court has discretion whether to exercise supplemental jurisdiction over his remaining breach of contract state-law claim against Aramark. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). "Indeed, when the federal claims are dismissed before trial, *there is a presumption* that the court will relinquish jurisdiction

over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (emphasis added).

When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (internal quotation marks and quoted authority omitted).

In the Seventh Circuit, "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Sharp Elecs. v. Metropolitan Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (internal quotation marks and quoted authority omitted). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) (internal quotation marks and quoted authority).

No circumstance in this case overcomes the presumption that the Court should relinquish jurisdiction over White's state-law claim. The statute of limitations is not a factor. Both federal and state law toll the relevant limitation period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998). The Court has not expended significant resources on the pending state-law claim. Further, it is not absolutely clear how the

state-law claim should be resolved. White's third-party breach of contract claim requires careful scrutiny of the operative contract between the IDOC and Aramark, which does not affirmatively name White or explicitly state that inmates in the custody of the IDOC are third party beneficiaries. Thus, White's claim is best left for the state courts to resolve. Finally, comity always favors allowing state courts to decide issues of state law.

Having resolved all claims within its original jurisdiction, the Court exercises its discretion and relinquishes supplemental jurisdiction over White's state law claims.

## IV. CONCLUSION

White's undeveloped statements sufficed at the pleading stage. However, a motion for summary judgment is the "'put up or shut up' moment in a lawsuit" and "requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). For the foregoing reasons, Defendant Aramark's Motion for Summary Judgment, Dkt. [39] is **GRANTED,** and the IDOC Defendants' Motions for Summary Judgment, Dkts. [43] and [47] are **GRANTED**. White's constitutional claims are **DISMISSED WITH PREJUDICE**.

The Court relinquishes supplemental jurisdiction over the state law breach of contract claim against Aramark and this claim is therefore **DISMISSED WITHOUT PREJUDICE**.

Final judgment shall issue by separate order.

**IT IS SO ORDERED.**

Date: 8/17/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

RAYSHON WHITE
188422
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All ECF-registered attorneys of record via email